UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-224(5) (NEB/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

GUHAAD HASHI SAID,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant GUHAAD HASHI SAID (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 and Count 14 of the Indictment, which charges the defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment against the defendant.



2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 and Count 14 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

### Count 1

From December 2020 through January 2022, Said knowingly and willfully conspired with others to participate in a fraudulent scheme to obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds that were intended as reimbursements for the cost of serving meals to underprivileged children.

Said purported to operate a Federal Child Nutrition Program site under the name Advance Youth Athletic Development. Said incorporated Advance Youth Athletic Development on February 26, 2021 and listed its registered office at a residential apartment unit in the Central Avenue Lofts, an apartment building in Northeast Minneapolis. Feeding Our Future submitted a Site ID request application for Advance Youth Athletic Development on or about March 8, 2021. Said purported to run the federal child nutrition program site from the residential apartment building in Northeast Minneapolis.

Beginning in March 2021, the Advance Youth Athletic Development site submitted meal count sheets claiming to have served 5,000 meals a day to children, seven days a week. During the three-month period from March to May 2021, Advance

Youth Athletic Development claimed to have served more than 900,000 meals at the Advance Youth Athletic Development site. In reality, Advance Youth Athletic Development only provided a fraction of those meals for which he claimed and received reimbursements. In support of their false claims, Said prepared and submitted fraudulent meal counts, attendance rosters, and invoices. Based on these claims, Said and his co-conspirators received $2,906,740 in Federal Child Nutrition Program funds.

Said claimed to receive meals from S & S Catering, who purported to be a vendor providing packaged meals and food to Advance Youth Athletic Development and other sites participating in the federal food program. S & S Catering sent invoices directly to Advance Youth Athletic Development, which charged for purportedly providing food served as part of the program. Advance Youth Athletic Development then paid the S & S Catering invoices with federal food program funds received directly from Feeding Our Future.

In reality, Advance Youth Athletic Development and Said's claims to be serving meals to thousands of children a day, seven days a week, was grossly inflated, and Said only served a fraction of the meals for which he claimed reimbursement. In support of these claims, Said submitted fraudulent meal counts, attendance rosters, and invoices.

Said caused money to be transferred to co-conspirators through shell companies created and used to receive and launder the proceeds of the fraud scheme.

Between approximately March and December 2021, Said and the Advance Youth Athletic Development submitted claims for serving more than 1 million meals. In total, Said and his co-conspirators received approximately $2,906,740 in reimbursement payments from Feeding Our Future between April and December 2021.

### Count 14

From at least in or about August 2020 through in or about 2022, in the State and District of Minnesota and elsewhere, Said conspired with others to conduct financial transactions knowing that the property involved represented the proceeds of some sort of unlawful activity, specifically wire fraud, and knowing the transactions were designed to conceal the nature of the proceeds of the unlawful activity.

More specifically, Said participated in a conspiracy to conceal, hide, and launder the proceeds of the fraudulent scheme to obtain Federal Child Nutrition Program funds. Said and his conspirators created non-profits and limited liability companies for use in hiding the source and ownership of proceeds of the fraudulent scheme to obtain Federal Child Nutrition Program funds.

S & S Catering, a small store-front restaurant, acted as a meal vendor, purporting to provide meals and food to Federal Child Nutrition Program sites. The limited liability companies purported to be sites serving meals and food to children. In reality, these companies were shells designed to disguise the source and ownership of the proceeds of the fraud scheme.

The sites, like Said's Advance Youth Athletic Development site, received reimbursement payments directly from Feeding Our Future after purportedly serving thousands of meals per day to children. S & S Catering submitted invoices to each site as backup for the number of meals served. After receiving reimbursement from Feeding Our Future, the sites transferred funds to S & S Catering to pay the fabricated invoices.

Said and his co-conspirators also created shell companies to receive, misappropriate, and launder the proceeds of their fraud scheme. Then Said and his co-conspirators transferred funds among their shell companies to conceal the source and nature of the funds. After laundering the proceeds of their scheme, Said and his co-conspirators used their shell companies to purchase real estate, cars, and other personal items.

For example, Said registered Advance Youth Athletic Development as a non-profit on or about February 26, 2021. On or about April 1, 2021, he opened a bank account for Advance Youth Athletic Development.

Between August 2021 and December 2021, Said transferred more than $2.1 million from Advance Youth Athletic Development bank accounts to S & S Catering. These payments were purportedly for providing meals and food for Advance Youth Athletic Development to serve to children. Said received more than $165,000 in payments from S & S Catering, Advanced Youth Athletic Development, Academy For Youth Excellence, and Youth For Higher Educational Achievement between December 2020 and December 2021.

3.   **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4.   **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.  **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.  **Statutory Penalties**. The defendant understands that Count 1 of the Indictment (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371) is a felony offense that carries the following statutory penalties:

    a.  a maximum of 5 years in prison;

    b.  a supervised release term of not more than 3 years;

    c.  a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

    d.  restitution as agreed to by the parties in this agreement; and

    e.  a mandatory special assessment of $100.

The defendant understands that Count 14 of the Indictment (conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)) is a felony offense that carries the following statutory penalties:

    a.  a maximum of 20 years in prison;

    b.  a supervised release term of not more than 3 years;

    c.  a maximum fine of $500,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

    d.  restitution as agreed to by the parties in this agreement; and

    e.  a mandatory special assessment of $100.

7.  **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea

agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations for Count 1 and Count 15 of the Indictment:

    a.    <u>Base Offense Level</u>. The parties agree that for Count 1 of the Indictment, the base offense level is 6. U.S.S.G. § 2B1.1(a)(1).

           The parties agree that for Count 14 of the Indictment, the base offense level is the offense level for the underlying offense from which the laundered funds were derived, pursuant to U.S.S.G. § 2S1.1(a)(1). Therefore, the base offense level for Count 14 is 22 as calculated under Count One.

    b.    <u>Specific Offense Characteristics</u>. The parties agree that for Count 1 of the Indictment, a 16-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(I) because the loss exceed $1.5 million but was less than $3.5 million. The parties agree that the offense level should be increased by 2 levels because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable or educational organization. U.S.S.G. § 2B1.1(b)(9)(A). The parties agree that the offense level should be increased by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits).The parties agree that no other specific offense adjustments apply.

           The parties agree that for Count 14 of the Indictment, a two-level enhancement applies pursuant to U.S.S.G. § 2S1.1(b)(2)(B) because defendant was convicted under 18 U.S.C. § 1956.

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that Count 1 and Count 14 of the Indictment are grouped together into a single group because both counts embody conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. U.S.S.G. § 3D1.2(c). Therefore, the offense level applicable to the group will be the highest offense level of the counts in the group, which would be 28. The parties disagree

about whether the defendant should receive a 2-level reduction for being a minor participant in any criminal activity. The defendant reserves the right to advocate for the application of a 2-level reduction for minor participation. The parties agree that apart from the above, no other Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category II. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Guidelines Range</u>. If the adjusted offense level is 25, and the criminal history category is II, the Sentencing Guidelines range is 63 to 78 months of imprisonment. If the Court applies a minor participation 2-level reduction and the adjusted offense level is 23, and the criminal history category is II, the Sentencing Guidelines range is 51 to 63 months of imprisonment.

    g.    <u>Fine Range</u>. If the adjusted offense level is 25, the Sentencing Guidelines fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2(c)(3).

8. **Revocation of Supervised Release.** The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. If the Court does not

accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. Defendant agrees that he owes restitution in the amount of $167,492.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain

information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to Count 1 of the Indictment.

Defendant consents to the entry of a money judgment forfeiture in the amount of $167,492, which represents the amount of proceeds he obtained from the conspiracy alleged in Count One of the Indictment. Defendant will be given credit against the forfeiture judgment for the net value of all assets forfeited from him in connection with this case.

15. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range as determined by the Court, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range as determined by the Court.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

17. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: 8/11/2025

BY: HARRY M. JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant United States Attorney

Date: 8/11/2025

GUHAAD SAID
Defendant

Date: 8/11/25

CHARLES CLIPPERT
Counsel for Defendant